My name is Loren Smith and I represent the plaintiff in the case below and the appellate in this case, National Union Fire Insurance Company of Pittsburgh. National Union was the insurance carrier for a company by the name of Transmontane Product Services and under a contingent business interruption policy it paid damages as a result of the event the subject of this case. And as such it became segregated to the rights of Transmontane and steps into its shoes. So for purposes of this appeal the rights and remedies and the limitations that apply to Transmontane also apply to National Union. The facts of this case is relatively simple. Transmontane had an exclusive lease of a pipeline. We're familiar with the basic facts. You can certainly refer to them, but why don't you move to your legal arguments. Okay. For my first issue, the question for the court is the type of damages that we're seeking to recover. The question is whether these are lost profits. Is that right? Yes. Because lost profits are excluded. Yes, there's an exclusion in the form C to the contract. It's an Exxon standard form agreement that excludes a list of types of damages that we would submit are difficult to calculate. And that includes consequential damages, lost profit damages as well too. It's our contention that we're not seeking lost profit damages. We're seeking damages under the UCC and the Texas equivalent. Texas Business and Commerce Code Section 2.713 for the market value approach. And the market value approach is the difference between the market price at the time the buyer learned of the breach and the contract price plus incidental or consequential damages less expensive saved. It's our contention that this is not a lost profit measure. And for support of that, if you look at the seller's remedies, this is a buyer's remedy. If you look at the seller's remedy under 2.708, there's also a market value damage approach for the seller. That's under Section A. But if you look at Section B, it says that if that approach is inadequate to provide a remedy to the seller, then lost profit's the measure, including reasonable overhead. It's our contention that the difference between the two is lost profit has an element of overhead that's included of it, and that makes it more difficult to calculate. Exxon says really what we're seeking is gross lost profits, and they don't provide a damage of what gross lost profits are. But again, we submit that these are two different elements. And, again, the reason we submit that lost profits would be excluded in this case because it's difficult to calculate, but market value in this case is easy to calculate. And if you look at the contract itself under Section A, it provides that the price, which is the market value in this case, is going to be based on what they call the opus price. That's the oil price information service. And that's on Exhibit A of the contract. And the price, though, that Exxon's going to sell it for to take this LPG from point A to point B, at point A they're going to sell it at the published opus price, in effect at the time, less a discount, which is a half a cent per gallon. So that's where Transmontane makes their money, buying it at a discount at Exxon's plant and then transporting it along the pipeline to point B. That's easily calculable under the market price. It doesn't have elements as to requiring us to look into Transmontane's accounting and determine actually what their lost profit was. Even if what Exxon says is correct and says that the market value approach under 2.713 is actually a lost profit claim, then our second issue comes into focus, and that's that we don't have a remedy if their interpretation is correct. And under UCC 2.719B, it provides that if there's a failure remedy, then we can assert any of the remedies afforded under the UCC, or in this case, the Texas Business and Commerce Code. Specifically, 2.719B says, where circumstances cause an exclusive remedy to fail of its essential purpose, remedy may be had as provided in this title. What Exxon says is, well, there is another remedy that's available to you, and they only identify one remedy, and that's the remedy of cover, which is under 2.712, which is the right to go out and buy product and then sell it to, in this case, the people at point B in the Edo trading on there. However, they don't give any reason why cover is not a lost profit claim, and market value is a lost profit claim. We submit, in this case, it's the same thing. It's going to provide the same amount of damages, because if we cover, we're not going to be able to go out and buy at Exxon's price. We're going to have to go out on the market and buy at the market price, which is a higher price, and sell it to the Edo at the same price. So if you take market value and subtract it from the lesser contract price, it comes out with the same number as under the market value approach. So, cynically, I'd suggest the only reason that they say that cover is allowable where market value price isn't is because we have an asserted cover in this case. Additionally, it creates a fact issue, because, again, if you go back to the provisions of 2.79, it says where circumstances cause the exclusive remedy to fail, it's a central purpose recovery could be had. Are you saying they're agreeing that there's a remedy available to you that you have not pursued that would allow that you can recover what you seek to recover in a lawsuit where they claim what you're trying to recover is lost property? But you're saying there's another remedy available to you. They're saying there's another remedy so it doesn't fail. But they haven't shown that that remedy applies. And, again, it's a circumstantial remedy. What's the circumstance? If cover wouldn't give us any sort of remedy, if we're buying at the same price and selling at the same price, what sort of remedy is that if we can't sue them for the difference? So cover allows us to buy at, presumably, market price and sue them to recover the lesser amount. So they're saying we can sue them for that, and that's not really lost profits, but really, as you put the numbers to it, it's the same remedy as market value approach. It's just we didn't go out and cover. Because, again, this is an appeal of a motion to dismiss. There's no facts out there that will show that we could have gone out and covered, that we could have gone out and actually even bought this and transported it to them. Under our third issue, we submit that even if — even if it is lost profits, that argument, we have an alternative argument that it shouldn't be construed to be lost profits because it basically makes the contract. Hold on a second. Did you just say even if it is lost profits, it shouldn't be construed to be lost profits? Is that what you said? I'm sorry. Let me correct that. It should not be construed to be lost profits based on other contract language in there. Their interpretation that all direct lost profits as opposed to consequential lost profits really makes — if what they say is correct and we don't have a remedy on there, it makes the rest of the contract provisions just merely suggestions in that there's requirements that there be 365 days notice before the plant can be closed and the agreement can be suspended. There's a six-month notice provision in there. There's provisions as to minimum requirements of 7,000, 11,000 barrels a day. There's a force majeure clause in there. And in this case, the force majeure clause is even not for the Court's consideration because the Court has to assume that it doesn't apply because that wasn't challenged there. But the force majeure clause is what they asserted, and they said that that excuses their performance. But it's even limited to instances that were beyond their reasonable control. So if a fire occurs and it wasn't beyond their reasonable control and they're not obligated to pay damages for it anyway, it essentially makes all of these provisions that are in this contract meaningless because we don't have a remedy. Would you say that lost revenue and lost profit are — is there a difference between lost revenue and lost profit? Yes. The lost profit has elements of overhead in it. So it has to look and see what the overhead for Transmontane was involved or if it's involved in there as well, too. That's a more difficult accounting procedure to go through, where the market value approach or cover is easier to determine because you just look at the price that you pay on the market and you subtract the price that Exxon would have sold it to you. That's the difference. That's the damage amount there. And the number you get when you do that calculation is called what? In our case, it's 1.1 million open porcelain. Tell me what — give me your calculation again. You take what and then you subtract something. Did you just say — Yes. You take the market value. All right. But you go buy it on the open market. In this case, it's the OPIS number, the Oil Price Information Service. They publish it every month. So you take the OPIS number and you subtract from it the price that Exxon was charging under the contract, which is specified — And the number you get when you do that calculation is called what? Whatever the amount is, what do you call it? That's the market value damage approach. It's damage. It's — I don't know. You can call it lost revenue. But, you know, lost revenue is not lost profit. Lost profit is a more complex calculation. If the Court doesn't have any more questions, I yield the floor at this time and save three minutes for rebuttal. Yes, you've saved time for rebuttal. Thank you, Mr. Smith. Mr. Howard? May it please the Court? Justice Graves, you asked the exact question right there at the end. What is it called when you take the contract price that they were going to sell it at to the third party, their revenue, minus what they were going to buy it from us for, the cost of their goods sold? That is, by definition, gross profit. Your revenue less your cost of goods sold is gross profit, as the appellants set out in their brief as the definition of gross profits. The appellee's position in this case is relatively simple. You have to plead the facts, which you will be required to prove, in order to prevail on your cause of action, in this case a breach of contract claim. They simply have failed to plead facts sufficient to prove a recovery under a breach of contract case. The contract clearly limits the recovery of lost profits. Whether those are called direct lost profits, consequential lost profits, or incidental lost profits is irrelevant. It limits the recovery of lost profits. The courts in Texas have clearly upheld the limitations of remedies provisions, and the appellants don't cite to a single case that contradicts that proposition. They cite to a number of cases where the courts are trying to factually determine whether or not a certain type of damages is limited in that case, but none of those cases stand for the proposition that you cannot limit the recovery of certain damages. In this case, the recovery of all lost profits are limited. Next, the facts as pled by the appellants in their case, in their pleading, in their complaint, only support a lost profits calculation. They throw in the UCC provision for market value damages, but they don't allege any facts to support a recovery under that UCC provision. So simply throwing in the UCC provision does not satisfy their burden to allege facts that will support a cause of action. Because the facts pled by the appellant do not support a cause of action, the district court properly dismissed the case on a 12b6 motion, and the court did that without prejudice, which would allow the appellant to go and properly plead the facts that they could then try and prove to support a recoverable breach of contract claim. They simply chose not to do that. Instead, they chose to come here. What's interesting is the appellant tries to say that simply because they have failed to account for general administrative expenses or overhead, that somehow it takes their gross profit claim and turns it into market damages. The fact that they have not taken the next step and deducted general administrative expenses from their gross profit to come up with net profit doesn't convert it from a lost profits claim. It's still a lost profits claim, and that's clear on its face. Interestingly, the appellants cited you to the contract, which does establish the market price for the propane that they were supposed to buy, and that's in Exhibit A. And they say the price that they were supposed to pay to us was the market price at the point of delivery, for the month of delivery, less some small discount. Okay. So that's the market price, not their contract for sale with a third party. That contract doesn't necessarily reflect market price. It includes transportation costs for a pipeline. It may be for an extended period of time. It may be a hedge. We don't know that, but what we do know is it's not a market price. It's their contract with a third party for sale. The market price is referenced in the contract. If they had pled that the contract sets out the market price and our discount is the differential, we wouldn't be here. But that's not what they pled. They pled for lost profits. Now, they want to say that they're under the UCC provision that says if the exclusive remedy fails that they can look to some other provisions of the UCC. First, the contract does not provide for an exclusive remedy. It doesn't provide for a remedy. It simply provides limitations on the types of damages that can be recovered. So there is no exclusive remedy that can fail. How do you determine market price at the time of the breach? How is that calculated? As the claim has pointed out, Your Honor, the price for the propane is the price shall be the average of the mean prices for propane as published in the Oil Price Information Services, OPIS, for Mt. Bellevue NTET propane for all publication dates for the month in which delivery is completed, less a product discount of .0050 per gallon. So the contract itself sets the market price and then gives their contractual price, which is that small discount. If anything, that's what they're entitled to, the market price as set forth by the contract, less the discount, which they weren't having to pay. That would be an appropriately pled measure of damages under UCC Section 2.713. And what did they plead as the market price? Did they use another different formula to determine the market price? They didn't use the formula. They used their contract to sell that gas to a third party, which includes transportation through a pipeline. Their contract for sale to a third party doesn't establish the market price for them as a buyer. It establishes the market price for them at a seller at a terminal at a different location,  What establishes the market price for them at a buyer at our facility is the contract language that sets out the market price and then says, but you're going to pay a discount to market price to buy our product. That would have been the market price as a buyer. They've given you a contract for sale for them as a seller. So it would be like a car dealership saying, well, I can buy cars for this price, but then look at the retail price that I'm going to sell to a customer and say, well, that's the market price. That's not the market price for you as a buyer. That's the market price for you as a seller. And the UCC provides that they're entitled to the market price at the place and time that they were to accept delivery. And the contract sets that market price and gives them a discount. So their damages, if properly pled, and the evidence supports it, would be the market price that's set forth in the contract less their .005 cent per gallon discount. Interestingly, they also cite to the UCC and acknowledge that the UCC itself does not even allow for the recovery of lost profits when you don't accept the goods or the goods are not delivered. So even if the contract did not include a limitation on the recovery of lost profits, the UCC does not even provide them that remedy because they didn't accept the goods. So they can't recover lost profits, whether it's because our contract limits those recoveries or based on the UCC. And they acknowledge that in their pleadings. They try and argue that we have not pled or demonstrated that they have an alternative remedy available to them, and therefore this failure of an exclusive remedy applies. That's not the way the pleading is required. If they were to establish that there was an exclusive remedy that failed and therefore they were entitled to some other remedy, that's a burden on the plaintiff to plead and prove those facts, and that's set out in the Mercedes-Benz case. In that case, the plaintiff alleged enough facts and the defendant failed to specially accept to that remedy, and the court then said that the defendant had waived that argument. We, in fact, are making that argument. We're saying their pleading is deficient. They haven't pled that an exclusive remedy has failed, and therefore they're entitled to an alternative remedy. Like I said, this case ultimately boils down to the damages that they've pled, the facts that they have alleged, and the facts that they have alleged is that their damages are the difference between the revenue they would have generated had they obtained the gas and sold it, less the cost of those goods sold that they were going to purchase from us. Interestingly, the case is very similar to the Cherokee case, which the appellants cite. Very similar set of circumstances. The defendants failed to deliver gas that the plaintiffs then said they were going to sell and make a profit, and everybody, including the appellants, agree that that is a lost profits case. The court simply determined that in that case, the lost profits that were limited were only consequential lost profits, and the court determined that the lost profits that were lost were direct lost profits. But they all still determined that they were lost profits. That's exactly the damage model that the plaintiffs have put forth in this case. Loss of revenue because of a sales contract versus the cost of goods sold, which again, by definition, is gross profits. All right. Thank you, Mr. Howard. Mr. Smith. Thank you, Mr. Chairman. Would you respond directly to what Mr. Howard has said, that what you're really trying to do here is to use the market price for you as a seller rather than the price for you as a buyer? I'm trying to use the remedy that's under the buyer's remedy of 2.713, but it defines the damages as what they said that were entitled to recover. They said that if we were here suing for the difference in the market price as set forth in this contract, which comes from the OPS, minus the 5-cent discount, that we'd be entitled to recover. That's exactly what we're suing for. That's the market value difference. The market value is the OPS price. The contract price is 5 cents, I mean, a half a cent per gallon less. So that is the market price, though, for you as a seller? Yes. Yes. And so what we make is a half a cent a gallon, taking it from point A to point B, using our pipeline. We get the discount, and that's how we make our money. And so that's pure market value. That's not lost profits. They call that gross lost profits, but they don't define that term. And that term's nowhere in the UCC. Profit, lost profit, is a deduction of overhead from also the lost money and the overtime that's worked in. That's what lost profit is as it pertains to this case. But, again, we're seeking to recover the exact same thing that they said we could recover, and we pleaded that. That is market value differential under 2.713. Thank you. All right. Thank you, Mr. Smith. Your case is under submission.